UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                              Criminal No. 16-251 (DWF/KMM)

   Plaintiff,

v.                                                     MEMORANDUM
                                                       OPINION AND ORDER
Jermaine Reggie Smith Williams,

   Defendant.

Sarah M. MacGillis, Esq., MacGillis Law, counsel for Defendant.

Benjamin Bejar, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Jermaine Reggie Smith Williams's ("Williams") motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. Nos. 116, 121 (collectively, "Motion").) The United States of America (the

---

[1] Williams filed a *pro se* motion for compassionate release on October 28, 2020. (Doc. No. 116 ("Pro Se Motion").) Williams was appointed counsel on February 19, 2021. (Doc. Nos. 118, 119.) On March 9, 2021, Williams's counsel filed a supporting memorandum—labeled as a motion—incorporating and expanding on the arguments in Williams's Pro Se Motion. (Doc. No. 121 ("Def. Memo.").) For the purposes of citation, the Court references only the supporting memorandum/motion.

"Government") opposes Williams's Motion.[2] (Doc. No. 123.)  For the reasons discussed below, the Court respectfully denies Williams's Motion.

## BACKGROUND

On December 20, 2016, Williams pled guilty to one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  (Doc. Nos. 35, 36.)  On May 1, 2017 this Court sentenced him to 70 months' imprisonment to be followed by a 3-year term of supervised release.  (Doc. Nos. 55, 56.)

Williams is currently incarcerated at Oxford FCI in Oxford, WI with an anticipated release date of July 13, 2022.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited March 18, 2021).  Oxford FCI reports 2 active COVID-19 cases among its inmates and 0 among its staff, 684 inmates and 75 staff who have recovered, and no inmate or staff deaths from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 17, 2021).  To date, the Bureau of Prisons ("BOP") has performed 924 tests for COVID-19 at Oxford FCI with 704 of them positive for the virus.  *Id.*  Moreover, 58 staff and 132 inmates at the facility have been fully inoculated against COVID-19.  *Id.*

Williams, who is 42 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because of his

---

[2]   The Court also received and considered Williams's reply to the Government's opposition.  (Doc. No. 125 ("Reply").)  The Court also acknowledges receipt of Williams's letter correcting the record.  (Doc. No. 126.)

race and because he suffers from obesity,[3] pre-diabetes, elevated blood pressure, kidney disease,[4] hematuria, and has previously been infected with COVID-19.[5] (Def. Memo. at 1, 3-11, 17-29; Reply at 1-6; *see also* Doc. Nos. 122 ("Medical Records I"); 122-1 ("Medical Records II"); 122-2 ("Medical Records III"); 124 ("Medical Records IV") (collectively, "Medical Records").) He also expresses concern about his increased risk of contracting COVID-19 in a prison setting. (Def. Memo. at 11-13; Reply at 3-12.) While he has been fully inoculated against COVID-19, he asserts that release is appropriate because the efficacy of the vaccine against new variants of the virus is unknown.[6] (Def. Memo. at 30-32; Reply at 4-6.)

Williams argues further that the sentencing factors set forth in 18 U.S.C. § 3553(a) favor release. (Def. Memo. at 32-37; Reply at 6-10.) Citing the severity of punishment imposed by COVID-19, Williams argues that the time he has already served is sufficient to demonstrate the seriousness of his conviction, promote respect for the law, and serve

---

[3] Williams's weight has fluctuated, but his average body mass index since August 25, 2020 is 34.1. (*See* Medical Records I at 5, 11; Medical Records II at 7, 15.) His most recent weight of 240.6 pounds is from January 10, 2021. (Medical Records II at 15.) His Medical Records also indicate a health check on March 3, 2021; however, his weight on that date is not provided. (*See* Medical Records III at 1.) A medical note from that visit indicates, though, that Williams lost approximately 20 pounds from an unknown point in time. (*Id.*)

[4] Williams also asserts that he has a family history of high blood pressure and kidney disease. (Def. Memo. at 1, 3, 5-7.)

[5] Williams tested positive for COVID-19 on October 13, 2020. (Medical Records IV at 4.)

[6] Williams received his first dose of the COVID-19 Moderna Vaccine on February 10, 2021 and his second dose on March 10, 2021. (Medical Records IV at 5-8.)

3

as adequate deterrence to future criminal conduct. (Def. Memo. 33-35; Reply at 6-10.) He argues further that he took full advantage of the educational and treatment programming available to him prior to it being discontinued due to COVID-19, has a detailed release plan, and strongly desires to reconnect with his minor son to help him make good decisions. (Def. Memo. at 34-37.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[7]

---

[7] While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See McCoy*, 981 F.3d 271 at 281; *United States v. Brooker,* 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones,* 980 F.3d 1098 at 1110-11 (6th Cir. Nov. 20, 2020); *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. Nov. 20, 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise broader discretion, it would still find that Williams's circumstances do not meet the demanding standard for compassionate release. Indeed, having been previously infected with COVID-19 without symptoms and now fully inoculated against

4

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[8] *Id.*

The record reflects that Williams requested compassionate release from the warden at Oxford FCI on or about April 30, 2020 (Doc. No. 121-2) and that it was denied

---

the virus, the Court finds Williams's circumstances insufficiently extraordinary and compelling to warrant compassionate release.

[8]   Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

5

on or about September 18, 2020 (Doc. No. 121-3).  Accordingly, the Court finds Williams's Motion ripe for review.

After a careful review of Williams's Motion, supporting memorandum, and other documentation, including his Medical Records, the Court finds that his circumstances fail to meet the demanding standard necessary for compassionate release.

The Court recognizes that Williams suffers from medical conditions that increase his risk of severe illness from COVID-19 including obesity and high blood pressure.[9] *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited March 18, 2021) ("CDC Medical Conditions").  The Court also recognizes that sadly, COVID-19 has had a disproportionate impact on African Americans.  *See* Centers for Disease Control and Prevention, Health Equity Considerations and Racial Ethnic Minority Groups, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnicminorities.html* (last visited March 18, 2021).

Nevertheless, the Court finds no indication that Williams's medical conditions, alone or in combination with his race or the presence of COVID-19 at Oxford FCI, has

---

[9]  According to the Centers for Disease Control and Prevention ("CDC"), obesity is a condition that increases Williams's risk of severe infection from COVID-19.  (CDC Medical Conditions.)  His high blood pressure may also increase his risk.  (*Id.*)  Williams's Medical Records indicate that his kidney disease was resolved as of January 5, 2021.  (Medical Records III at 17.)  The CDC does not pre-diabetes, hematuria, or prior COVID-19 infection as conditions that increase a person's risk of severe illness from COVID-19.  (CDC Medical Conditions.)

diminished or will diminish his ability to provide self-care while in prison. While it is unfortunate that Williams contracted COVID-19 in October, the record reflects that he was asymptomatic and appears to have largely recovered by October 27, 2020. (*See* Medical records I at 54; Medical Records II at 15.)

Moreover, the Court finds that any risk that Williams will be reinfected with COVID-19 is largely mitigated by the fact that he has been fully vaccinated against the virus. *See, e.g.*, *United States v. Wakefield*, Cr. No. 1:19-95, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (denying compassionate release despite defendant's obesity, diabetes, and hypertension where he previously tested positive for COVID-19 and received first vaccine dose); *United States v. McGill*, Cr. No. SAG-15-37, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (denying compassionate release where defendant had measure of immunity after recovering from COVID-19 and received first vaccine dose); *United States v. Beltran*, Cr. No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to defendant with underlying health conditions when defendant had received first vaccine dose); *United States v. Grummer*, Cr. No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-10).

According to the CDC, the Moderna vaccine that Williams received is highly effective, preventing 94.1% of infections in clinical trials. *See* Centers for Disease Control and Prevention, Information about the Moderna COVID-19 Vaccine, *https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html*

(last visited March 18, 2021). The Court recognizes Williams's concern that the vaccine's efficacy against new variants of COVID-19 is unknown; however, the Court finds this fear entirely speculative and declines to grant release based on a generalized fear of reinfection. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection).

It is truly unfortunate that so many inmates at Oxford FCI, including Williams, contracted the virus. It is promising that the facility currently has just two active cases of COVID-19. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 18, 2021). Moreover, despite its once high infection rate, Oxford FCI was able provide effective medical treatment such that all inmates who contracted the virus successfully recovered. *Id.* Oxford FCI also continues to employ measures to mitigate the spread of COVID-19.[10] It is also promising

---

[10] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited March 18, 2021). Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits. *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited March 18, 2021). The BOP periodically updates its Plan and is currently in Phase Nine. Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-*

that BOP has successfully administered over 83,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it, including Williams.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 18, 2021).  Sadly, until the vaccine is more widely available, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Williams did present an extraordinary and compelling reason, release is not appropriate because the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against release.  The Court recognizes the hardship that COVID-19 has imposed on inmates; however, the Court finds that a 26% reduction in sentence would not reflect the seriousness of Williams's conviction, promote respect for the law, or provide a just punishment.[11]  *See* 18 U.S.C. § 3553(a).  While the Court commends Williams for his commitment to rehabilitation and desire to be a positive role model for his son it still finds that release is not appropriate at this time.

---

*content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited March 18, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited March 18, 2021).  Since March 2020, the BOP has transferred more than 22,500 inmates to home confinement.  *Id.*

[11]   Williams has served approximately 46 months of his 70-month sentence.  (Doc. No. 121-1.)

9

## CONCLUSION

For the reasons set forth above, the Court finds that Williams fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because the § 3553(a) factors weigh against it.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jermaine Reggie Smith Williams's motion for compassionate release in light of the COVID-19 pandemic (Doc. Nos. [116], [121]) are respectfully **DENIED**.

Date: March 22, 2021

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge